THOMAS J. FINUCAN *et al.*

*v.*

JOHN A. J. KENDIG *et al.*

*Filed at Ottawa March 6, 1884.*

1. VOLUNTARY SETTLEMENT—*grounds for avoiding it—mistake in omitting power of revocation—acquiescence and delay.* A person for whom another held the legal title to lands, upon the advice of counsel procured the property to be conveyed in trust for the benefit of himself and his wife, and the survivor, and on the death of both, the same to be conveyed to their children or descendants *per stirpes.* After the lapse of twenty years, during which time the disposition so made had been acquiesced in, it was held such deed would not be set aside on the ground of a mistake in not inserting a power of revocation, without proof of that fact of the most satisfactory kind. The evidence in this case was held not sufficient.

2. SAME—*omission of power of revocation—and the want of advice in respect thereto—as grounds for avoiding the settlement.* The want of a power of revocation in a voluntary settlement, or the want of advice as to the insertion of such a power, affords no ground, in equity, for the donor to set aside such a settlement, but the same is only a circumstance to be taken into account in determining upon the validity of the settlement, and is of more or less weight, according to the facts of each particular case. In the absence of fraud, undue influence, or of any unfairness, and where the facts and situation of the parties show that the settlement was not improvidently made, it will not be set aside on the ground, merely, that the deed creating it contains no power of revocation.

3. STATUTE OF FRAUDS—*must be pleaded, or it will be waived.* Where the only grounds set out in a bill to set aside a voluntary settlement by a donor for his wife and family, are mistake in drafting the deed, absence of a power of revocation and of any advice in respect thereto, and the improvi-

dence of the arrangement, he can not rely upon the Statute of Frauds as a ground to avoid the same. If it is not pleaded in some way, the party, by implication, waives the objection that there was no writing signed by the beneficial owner directing the trust deed.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

The original bill in this case was filed by Michael Finucan, November 29, 1881, in the Superior Court of Cook county, against John A. Kendig, Murray F. Tuley, Joseph N. Barker, and the children of the complainant, praying that a certain voluntary deed of trust made by the complainant may be canceled, or that it may be reformed. Pending the suit the complainant died testate, and his executors, Thomas J. Finucan and James L. Cleary, filed a supplemental bill.

The original bill sets out that on the 1st day of June, 1860, Michael Finucan was the owner in fee of lots 1 and 2, in Hayne's subdivision of lots 1 and 2 of the canal trustees' subdivision of certain blocks in Chicago, and on that day made a deed of said lots to one Joseph Sexton; that afterward, Michael O. Shaughnessy, having a judgment against complainant, filed a creditor's bill against him, in which there was a decree subjecting the lots to sale for the satisfaction of the judgment, and on August 15, 1862, a master's sale of the lots under the decree was made to one Richard McCleavey, and a certificate of purchase delivered to him; that about the 1st of December, 1862, while acting under the advice of the defendants Tuley & Barker, who were his attorneys, complainant delivered to said Tuley.$220, with which to purchase from McCleavey the said certificate of purchase, and complainant being ignorant, and somewhat dissipated and reckless in his personal habits, was advised by his said attorney, Tuley, to have the title to said lots so arranged as to protect complainant and his wife during her life, to which he assented; that his said attorney then purchased

the certificate of purchase with said money, and caused it to be assigned by McCleavey to Kendig, who occupied a part of his office, and on December 1, 1863, the master executed a deed of the lots to Kendig; that said Tuley then directed Kendig to prepare an ordinary deed of trust, containing a power of revocation, conveying the lots to Tuley & Barker, in trust for the use and occupancy of Michael Finucan, and his wife, Bridget Finucan, and upon the death of complainant, or of his wife, to convey the lots to the survivor, and containing certain other trusts, and gave Kendig a form to use as a partial guide from which to draft the deed, and explained the changes to be made; that Kendig gave the form to one Day, then a clerk in his office, to prepare the deed as directed by Tuley, and that on December 5, 1863, Day prepared, and Kendig and his wife executed, the deed of trust in question, which purports to convey the lots, by Kendig and his wife, to Tuley & Barker, and the survivor of them, "in trust, nevertheless, for the following uses and purposes, viz:

"1.   For the occupation and uses of Michael Finucan, and Bridget Finucan, his wife, and for the occupation and use of the survivor of them so long as he or she shall live.

"2.   In the event of the said Bridget surviving the said Michael, and failing, at any time after said Michael's death, to occupy said real estate by actual residence thereon, then from that time until the conveyance to the children of said Bridget and said Michael, or the children of such children, as hereinafter provided, to take possession of and have said premises, and to receive the rents and profits thereof, and out of the same to keep the said premises in repair and properly insured, and to pay all taxes, assessments and charges that may be imposed thereon, and to pay the residue of such rents and profits to said Bridget Finucan, upon her sole and separate receipt, to the intent and purpose that she may enjoy the same free from any control, interference or liability of any husband (that she may have) during the time of her natural life.

"3.   By and with the joint consent of the said Michael and Bridget, to raise money upon said premises, by way of trust deed, mortgage, or other deed of conveyance; to sell the same, and with the said Michael and Bridget's joint consent to make and execute bonds and notes for such money, deeds of trust, mortgages, absolute deeds of conveyance, or any deeds of conveyance of said premises, to any person or persons whomsoever, that may be necessary to raise money upon said premises, by way of mortgage or otherwise, or to sell, transfer and convey said premises; and the only evidence of the said joint consent of said Michael and the said Bridget required by this third section of this deed, shall be the said Michael and Bridget joining in the execution of any of the instruments of writing in this section and in this deed mentioned.

"4.   In event said premises shall not be conveyed by absolute deed in accordance with foregoing provisions, then, upon the death of the survivor of said Michael and Bridget, to convey the said premises in fee simple to the children of the bodies of the said Michael and Bridget Finucan living at the time of the death of the longest liver of them, (said Michael and Bridget,) or to the children of such children lawfully begotten, *per stirpes.*"

The bill further states that Kendig and Day neglected to follow the instructions given by said Tuley, and negligently failed to insert in the deed the usual power of revocation, and by mistake inserted therein the first, second and fourth paragraphs contained in the deed defining the trusts; that complainant's wife died October 7, 1879, and that it was not until 1880 that complainant learned, for the first time, of the erroneous paragraphs and provisions in the deed; that he has continuously occupied the premises as a homestead since 1859, has made valuable improvements on the lots, which he would not have made had he known of the provisions of the deed; that the deed is unreasonable and improvident, and was made without his knowledge or consent, and that he was

never advised by his said attorney, or any one, to consent that such a deed be made.  On hearing, upon proofs taken, the bill was dismissed, and the complainants appealed to this court.

Mr. FRANK A. JOHNSON, and Messrs. WINDES & SULLIVAN, for the appellants:

That a voluntary settlement contains no power of testamentary disposition or power of revocation, but conveys nearly all of the settler's property to trustees, out of his control, which is improvident, and when he is not advised of the contents of the deed, or that it is irrevocable, and it is not the free, voluntary and well understood act of his mind, may be declared void, and a reconveyance ordered, counsel cite many authorities, among which are:  Hill on Trustees, (4th Am. ed.) 84, note 1; *Moore* v. *Pance,* 9 Hare, 299; *Noldred* v. *Gilham,* 1 P. Wms. 576; *Griffiths* v. *Robbins,* 3 Mad. Ch. 105; *Hunter* v. *Atkins,* 3 M. & K. 113; *Huguein* v. *Basely,* 14 Ves. 273; *Cooke* v. *Lamotte,* 15 Beav. 234; *Houghton* v. *Houghton,* id. 298; *Meadows* v. *Meadows,* 16 id. 401; *Nancy* v. *Williams,* 22 id. 452; *Forshaw* v. *Welsby,* 30 id. 243; *Fullager* v. *Clark,* 18 Ves. 481; *Blackie* v. *Clark,* 15 Beav. 452; *Nobday* v. *Peters,* 28 id. 349; *Cobbitt* v. *Brock,* 20 id. 524; *Guarnsey* v. *Mundy,* 24 N. J. Eq. 243.

When the deliberate intent to make an irrevocable gift does not appear, and when no motive for such a gift is shown, the absence of a power of revocation is *prima facie* evidence of a mistake.  The rule is the same when the motive has failed, as was the case in *Hastings* v. *Orde,* 11 Sim. 205.

It is the duty of the solicitor who prepares the settlement, to see that the irrevocable nature of the instrument is fully understood by the settler.  May on Voluntary Alienation, 452.

The children have no special claims.  *Rutherford* v. *Morris,* 77 Ill. 416; *Uhlich* v. *Muhlke,* 61 id. 499; *Heuser* v. *Harris,* 42 id. 425; *Carwater* v. *Kimler,* 43 id. 272.

The trust deed from Kendig and wife to Tuley & Barker was made by mistake, and should, for that reason, be reformed. The parties have not met upon a material point, and if the parties can be placed *in statu quo*, equity will correct the mistake. 1 Story's Eq. Jur. secs. 115, 162; *Worden* v. *Williams*, 24 Ill. 75; *Lindsay* v. *Davenport*, 18 id. 381; *Carter* v. *Barnes*, 26 id. 456; *Hunter* v. *Bilyeu*, 30 id. 246; *Mills* v. *Lockwood*, 42 id. 112.

He only can create a trust who has the legal estate in the subject of that trust. 2 Washburn on Real Prop. 470, *195.

No trust in this case, under the Statute of Frauds, could be created by Kendig, who only held in trust for Finucan. A writing, to declare a further trust, must be signed, not only by the trustees, but by the beneficial owner. Browne on Statute of Frauds, 99; *Tiernay* v. *Wood*, 19 Beav. 330; *Adlington* v. *Cann*, 3 Atk. 151; Hill on Trustees, *282, 317, 509; 2 Story's Eq. Jur. sec. 977.

The burden of proof is on the party claiming a benefit under a voluntary deed, to show that it was the free, voluntary and well understood act of the grantor. Kerr on Fraud and Mistake, 151; *Griffiths* v. *Robbins*, 3 Mad. 105; *Cooke* v. *Lamotte*, 15 Beav. 234; *Houghton* v. *Houghton*, id. 278; *Meadows* v. *Meadows*, 16 id. 401; *Phillipson* v. *Kerry*, 32 id. 638; *Sharp* v. *Leach*, 31 id. 494; *Guarnsey* v. *Mundy*, 24 N. J. Eq. 243; *Lyon* v. *Home*, L. R. 6 Eq. 655; *Coutts* v. *Ackworth*, L. R. 9 Eq. 44.

Messrs. KNICKERBOCKER & HOLDOM, for the appellees, after reviewing the facts in detail, contended that there was no mistake in the deed of trust, and that the settlement made was a provident one, under all the circumstances, and a prudent and well advised act.

After reviewing appellants' authorities, counsel say, the rigor of the English law on this subject has not been sanctioned by the courts of this country,—citing *Jenkins et al.* v.

*Pye,* 12 Pet. 241; *Eckert* v. *Gridley et al.* 104 Ill. 306; Kerr on Fraud and Mistake, 434; *Villiers* v. *Beaumont,* 1 Vern. 100; *Bayle* v. *Newton,* id. 464; *Petre* v. *Espinasse,* 2 M. & K. 496.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

The allegations of mistake in the deed of trust in question, which are made in the bill, were not supported by proof. The evidence in that regard rests upon the testimony of Kendig. He testifies that he handed to Day an old deed, to be used as a form in the drawing of the deed in question, with two or three written slips of paper on which were stated terms of grant to be incorporated in the deed, and that Day missed these slips of paper entirely, and drew up the deed in question, which was wholly contrary to the instruction or mean- · ing of all the parties,—Michael Finucan, Tuley and himself; that instructions were certainly given Day to insert in the deed a power of revocation, and it was omitted through Day's carelessness; that he did not read it over after it was written by Day, and he fancies Tuley did not; that it was designed that the property should be for the use and occupation of Bridget Finucan, the wife, so long as she should live, and if Michael Finucan should survive her, to be conveyed to him in fee simple. In estimating the value of this testimony, regard is to be had to the distance of time after the transaction when it is given, (nearly twenty years,) and the situation of the witness in respect to the matter. Kendig, although the party executing the deed of trust as donor, was a mere medium of conveyance of the property.

At the request of Tuley, the attorney of Michael Finucan, the master's deed of the lots was made to Kendig, in order that he might convey as to be requested. He had but a slight acquaintance with Michael Finucan, and never had any conversation with him or his wife in respect to the prop-

erty. Judge Tuley says that he had conversations with Kendig in reference to the matter, but has no recollection of a conversation with him about the details of it; that Kendig was not consulted to any great extent, to his recollection; that Kendig was a very young lawyer at the time, and he did not rely very much on his assistance or advice. The mistake testified to by Kendig is in Day not following the instructions of Tuley in drawing the deed. Upon this point Judge Tuley himself must be the more competent witness. He testifies that he drew the original draft of the deed of trust in question, he has no doubt, and gave it to some clerk in the office to copy, and thinks the copy is in the handwriting of Day; that after it was copied he must have looked it over, from the fact that he finds two words in it which are in his handwriting. This is quite satisfactory evidence that he did revise the deed, and if he did so, we are satisfied there could not have been in it the mistake testified of by Kendig. Judge Tuley states he could not say whether there is anything in this deed in question that was not intended to have a place in it. Without adverting further to his testimony on this point, we will say, that taking it all together, to our minds it satisfactorily rebuts all evidence of the alleged mistake in this deed of trust.

The only question remaining is, whether the deed was made with the authority, consent and knowledge of Michael Finucan. Michael Finucan and Kendig testify that it was intended there should be in the deed a power of revocation, and that on the death of the wife, Bridget Finucan, the property should be conveyed to Michael Finucan. The deed speaks for itself, and it is cogent evidence that it was the instrument, in all its provisions, intended to be prepared. To allow one, at such a distance of time as in this case, to overturn a solemnly executed deed, made by his request and direction, by declaring that his intention was different from what the writing expresses, would be most dangerous to the

security of instruments of writing.   The evidence in this regard, to have avail, should be of the most satisfactory kind.

The unimportant connection of Kendig with the transaction has been referred to.   It was so slight that he may almost be said to have had nothing to do with the making of the deed. His own intention in the matter is of no consequence, as his interest in the property was merely nominal.   Of the intention of Michael Finucan, or his wife, he could know nothing from conversation with them upon the subject, as he states he had none, and we do not understand, from the evidence, he got any such knowledge from overhearing their conversation.   Any knowledge of intention, aside from his own, it would seem, must have been derived from Judge Tuley, and any intention as derived from him, we have no doubt, was carried out in the deed.

The witness Michael Finucan, in view of the present changed condition of things, may see that the provisions above named, of a power of revocation, and of conveyance to him on the death of his wife, would have been very proper to have inserted in the deed; that they ought to have been inserted in it; that were he to make such a deed now, he would have inserted in it those provisions; and therefore his mind may be led to the belief that it was the intention the deed should have contained those provisions.   The circumstances of the transaction shed light upon what was the intention and object.   The suggestion to have the property placed in trust came from Judge Tuley, who had for several years been the trusted attorney and adviser of Michael Finucan.   The latter, through his bad personal habits, had become embarrassed financially, and on the money being placed in Judge Tuley's hands for the redemption of the lots which had been sold under a judgment against Finucan, the idea occurred to him that it would be judicious to have the title so placed that the property would be protected from the

consequences of Finucan's personal habits, and made secure for the benefit of the family of the latter.   We say family, although Finucan disclaims that his children were spoken of or in contemplation.   The proof shows that Michael Finucan carried on a saloon, and his wife kept a boarding house on the premises, and assisting in the saloon; that she was an extraordinary woman for her position in life, and hard working, intelligent, and very saving; that their joint accumulations, contributed to by herself, probably, as much as by her husband, went into the purchase of the property, and the improvements afterwards made upon it.   This is mentioned, not as showing that she had any legal right in the property, but that she felt an interest in it, and would naturally desire to have sure provision made for herself and children.   She took an active part in having the settlement made, and consulted, together with her husband, with Judge Tuley upon the subject. How much was confided to the latter in the making of the deed, appears from the words of Michael Finucan, that "in 1863, and prior to and since that time, I intrusted the whole of my matters to Judge Tuley; didn't do anything outside of him; whatever he wanted me to do I generally done;" and in reference to the transaction in question: "He told me to make it over to my wife, just the same as he did.  I told him to do just as he had a mind to with it.  I gave him consent— consent in this way."   We think, from the evidence, it was left with Judge Tuley to prepare such a deed as he thought would be proper in the circumstances; that there was the assent of Michael Finucan to such a deed, and that the deed which Judge Tuley prepared, and which was executed, should be taken as having been made with the authority, knowledge and consent of Michael Finucan.   Mrs. Finucan, no doubt, exerted an influence in shaping the provisions in the deed, and we think, from the evidence, the provision as to the children was intentionally and deliberately inserted, after consultation with both Mr. and Mrs. Finucan, as being a

proper one to make, and one in accordance with their wishes, —and the same with all the other provisions which appear in the deed.

Appellants' counsel have, in their argument, gone very elaborately into the doctrine of the court of chancery on the subject of voluntary settlements, in the particular of there being the absence of a power of revocation in such a settlement, citing very many English authorities upon the subject, in some of which may be found remarks going quite far in the direction that a power of revocation ought to be inserted in such a settlement, or the settler should have been advised that there should be a power of revocation inserted in it; but we think the conclusion to be drawn from all the authorities is, that there is no such rule that the want of a power of revocation in a voluntary settlement, or the want of advice as to the insertion of such a power, will afford ground, in equity, for the donor to set aside such a settlement, but that the same is a circumstance, and a circumstance merely, to be taken into account in determining upon the validity of the settlement, and of more or less weight, according to the facts of each particular case. See *Toker* v. *Toker*, 3 DeG. J. & S. 487; *Hall* v. *Hall*, L. R. 8 Ch. App. 437; *Bill* v. *Cureton*, 2 Mylne & Keene, 503; *Petre* v. *Espinasse*, id. 496; *Kekewich* v. *Manning*, 1 DeG. M. & G. 176; *Jenkins* v. *Pye*, 12 Pet. 241.

We do not find in the present case, outside of the absence of a power of revocation, and of advice as to its insertion, any element which should go to impeach the validity of the deed. Moreover, the deed here does contain a limited power of revocation, in providing that by and with the joint consent of Michael and Bridget Finucan the property might be mortgaged, or sold and conveyed. The lots, at the time of the making of the deed, appear to have been worth not more than $300 or $400, and the improvements on them, consisting of a frame building, were of the value of about $400. There

was nothing of fraud, undue influence, or of any unfairness whatever about the transaction. There was no improvidence in the arrangement, but it appears to have been a very proper and judicious one in the circumstances.

It is remarked upon as showing the improvidence of the deed, that since the making of it Michael Finucan reformed from his former bad habits; that the distribution of the property among the children now would not be just; that two of the daughters are married and well circumstanced, and stand in no need of any of the property; that two of the children are in delicate health, and need more than an equal share with the rest, and that it was needful, at the time of the filing of the bill, that Michael Finucan should have power to mortgage the lots in order to raise money to erect a building on lot 2, to bring in an income for the support of the family. These might be considerations against the making of such a deed in the present position of things, but the deed, as to its reasonableness, must be judged of in view of the situation at the time it was made. In *Eckert* v. *Gridley*, 104 Ill. 306, we held that a voluntary settlement upon a child could not be revoked.

A further point is made, that in order to create a trust upon a trust in lands, it must be proved by a writing signed by the beneficial owner, and that there is here no declaration of trust by a writing signed by Finucan. However this may be, it is enough to say that no such ground for the avoidance of the deed is set out in the bill. The only grounds in the bill for the impeachment of the deed are, mistake in the drafting of the deed, absence of a power of revocation, of any advice in respect thereto, and the improvidence of the arrangement. The well settled rule requires that one who would avoid the obligation of a parol contract by reason of the Statute of Frauds, must set up the statute, and rely upon it by pleading in some way, and if this is not done, he thereby

impliedly waives the objection that the contract was not in writing. That rule applies here.

Upon the whole, we see no just ground for setting the deed aside, and the decree dismissing the bill must be affirmed.

*Decree affirmed.*