Syllabus.

JAMES R. LANE

*v.*

ABRAM LESSER *et al.*

*Filed at Ottawa January 22, 1891.*

1. RESCISSION OF CONTRACT—*for sale of land—refusal of purchaser to perform.* Where the vendor is ready and willing to perform his part of a contract for the sale of certain land, and tenders such performance, and the vendee peremptorily refuses to accept a conveyance and pay the consideration, basing his refusal, not upon any supposed inability on the part of the vendor to convey and give a good title, but upon an unfounded claim of a deficiency in the quantity of the land and that a part of it was occupied by a railroad, such refusal will authorize the vendor, at his election, to declare the contract rescinded.

2. CLOUD UPON TITLE—*what will constitute—record of an escrow—or a copy—or a rescinded contract.* In case a contract for the sale of land is placed in the hands of a third person, to be held in *escrow,* neither of the parties thereto will have the right to have it placed on record ; and if the vendee places a mere private copy of the instrument on record, so that the record appears as a transcript of the original, this will constitute a tortious clouding of the title, which a court of equity will remove, whether the original contract remains in force or not.

3. And the placing of a contract for the sale of land upon record by the vendee after it has been rightfully rescinded by the vendor, for a refusal of performance, constitutes a cloud upon the title of the latter, which a court of equity will cancel and remove.

4. RECORDING LAW—*recording a copy.* The statute permitting the recording of all instruments relating to or affecting the title to real estate, although not acknowledged, does not authorize the recording of a letter-press copy of a contract for the sale of land, and the placing of such copy on record is a fraudulent and unauthorized act.

5. NEW TRIAL—*in chancery—on the facts.* Where the trial court, in a suit in equity, has an opportunity of seeing the witnesses and hearing their testimony as it is delivered orally, the findings of such court upon mere questions of fact, when the testimony is conflicting, will not, ordinarily, be disturbed on an appeal or error, unless such findings are clearly and manifestly against the preponderance of the evidence.

APPEAL from the Superior Court of Cook county ; the Hon. EGBERT JAMIESON, Judge, presiding.

567:30 LRA 65n

| | |
|---|---|
| 135 | 567 |
| 160 | 528 |
| 135 | 567 |
| 55a | 230 |
| 135 | 567 |
| 172 | 238 |
| 135 | 567 |
| 175 | 439 |
| 135 | 567 |
| 181 | 643 |
| 135 | 567 |
| p89a | 5214 |
| 135 | 567 |
| 193 | 5650 |
| 135 | 567 |
| 195 | 5618 |
| 135 | 567 |
| 102a | 5276 |
| 102a | 5300 |
| 135 | 567 |
| 209 | 200 |
| 210 | 5536 |

On the 16th day of April, 1889, the following contract was executed by Alexander S. Lieb and James R. Lane, and concurred in as to block 18 therein described by Abram Lesser, to-wit:

"CHICAGO, *April 16, 1889.*

"The following described real estate, to-wit, blocks 17, 18 and 19, of Jones' subdivision of the south-west quarter of section 29, township 38, range 14, east, (south-east corner of Ashland avenue and Seventy-fifth street,) comprising twenty acres, is this day bargained and sold to James R. Lane, of Chicago, Illinois, at the agreed consideration of $1250 per acre,—$500 to be paid this day, $4500 May 15, 1889, and $7750 June 1, 1889, the balance of said consideration, to-wit, $12,250, to be provided for as follows: On the payment of $4500 May 15, as above provided, good and sufficient warranty deed, conveying said block 18 to the said James R. Lane, or whomsoever he may designate, to be delivered, the grantee at the same time to give his three promissory notes, for $1333.33 each, payable on or before one, two and three years after date, respectively, with privilege of paying $1000 or more at any time, with interest at six per cent per annum, payable semi-annually, and secured by trust deed on said block 18, trust deed to provide that, on the payment of $1000 at any time, trustee shall release one-quarter of said block 18.

"On the payment of said sum of $7750, as provided above, blocks 17 and 19 to be conveyed to the said James R. Lane, or whomsoever he may designate, by good and sufficient deed, on the delivery of which the grantee therein shall give his three promissory notes, for $1416.67 each, payable on or before one, two and three years after date, respectively, with privilege of paying $1062.50, or more, at any time, with interest at six per cent per annum, payable semi-annually, and secured by trust deed on the said block 17,—trust deed to provide that on the payment of $1062.50 at any time the trustee shall release one-quarter of said block 17. Said grantee shall also give his

three promissory notes, for $1333.33 each, payable on or before one, two and three years after date, respectively, with privilege of paying $1000 or more at any time, with interest at six per cent per annum, payable semi-annually, and secured by trust deed on said block 19,—trust deed to provide that on the payment of $1000 at any time, trustee shall release one-quarter of said block 19. Complete abstracts of title to be furnished by the seller and to go with the property. Should title not prove good, then the $500 paid this day shall be promptly refunded and this contract cancelled.

"It is further understood that the sellers may, as long as they have any interest in said property by reason of unpaid deferred payments thereon, take said abstracts of title at any time they are not in use by the owners of said property, for the purpose of examination, in order to negotiate the notes evidencing said deferred payments, for a reasonable length of time, not exceeding ten days.

"Said property is sold subject to a special assessment for sewers, if there is such an assessment outstanding, and also subject to the taxes of 1889, all deferred payments to be made payable at Felsenthal, Gross & Miller's bank, Chicago, Illinois.

A. S. Lieb,<br>Jas. R. Lane.

"I hereby concur in this contract as to said block 18.

A. Lesser."

Said contract, at the time it was signed, together with said Lane's certified check for $500, was placed in the hands of Felsenthal, Gross & Miller, bankers of Chicago, in escrow, to await the performance of its conditions by the parties. The contract, so far as it related to block 18, was not performed May 15, 1889, as therein provided, said Lane insisting that he had not then had time to obtain the opinion of his legal adviser as to the sufficiency of the title to said block as shown by the abstract of title furnished him by the vendors. Per-

formance was accordingly delayed until June 3, 1889, when the parties met, and at that meeting certain conveyances of the property described in the contract were tendered to said Lane by the vendors which he refused to accept, and thereupon the vendors declared the contract abandoned and terminated. Immediately thereafter Lane, who had obtained a letter-press copy of the contract at the time it was executed, took said copy to the office of the recorder and had it placed on record. Lesser thereupon filed his bill against Lane, making Lieb and Felsenthal, Gross & Miller also parties defendant, praying to have the record of the copy of said contract cancelled and removed as a cloud upon his title to said block 18, and also praying that the contract itself be declared null and void, and that Lane be perpetually enjoined from setting up any right under said contract to said block 18.

Lieb answered admitting the allegations of the bill and the complainant's right to relief thereunder, and filed his cross-bill setting up substantially the same matters and praying substantially the same relief in his own behalf as to said block 17.

Defendant Lane answered the original bill admitting that Lesser is the owner of said block 18, subject to a deed of trust to one Cody for $4800, and also subject to said defendant's rights under said contract, and also admitting the execution of said contract and the delivery thereof, together with the defendant's check for $500 to Felsenthal, Gross & Miller to await its performance. Said answer alleges that before the delivery of said contract to Felsenthal, Gross & Miller, a letter-press copy thereof was made by said defendant, in the presence and with the knowledge and consent of said Lieb who then represented both himself and the complainant. The answer admits that said contract and check are still in the possession of Felsenthal, Gross & Miller, and admits the delivery by the complainant to said defendant of abstracts of title, but alleges that said abstracts showed the existence and lien of said trust deed to Cody. The answer alleges that the defendant had a

conversation with the complainant about May 13, 1889, in which he informed the complainant that he was ready at any time to close said contract according to its terms, but that said Lieb had not been and was not then able to convey to the defendant title to said blocks 17 and 19, and that the defendant desired to close the contract as an entirety, and to receive the title to all three of said blocks, and therefore that some delay was necessary to enable said Lieb to procure the title to one of said blocks; that said defendant always represented to the complainant that he was prepared and ready to carry out said contract at any time when said Lieb and the complainant should be ready to perform on their part by delivery of the title and possession of the three blocks embraced in the contract; that Lieb and the complainant have been utterly unable, after repeated efforts, to obtain for the defendant the title to said block 19, and that the defendant, after Lieb and the complainant admitted their inability to procure the title to said block 19, purchased said block from the receiver of the Trader's Bank of Chicago, who at the time said contract was made, was the owner thereof.

The answer admits that on June 3, 1889, the complainant tendered to said defendant a deed of block 18, but alleges that at the time of such tender, said trust deed to Cody was an existing lien on said block, and that the complainant then and at all times since has failed to procure for the defendant a proper release of the same; that on said 3d day of June Lieb and the complainant wholly failed to procure for the defendant the title to said block 19. It denies that said defendant has ever refused to comply with the provisions of said contract, but alleges that no proffer was ever made by Lieb or the complainant to the defendant to carry out their part of the undertakings of said contract.

The answer denies that said defendant ever elected to abandon said contract as to said block 18, and admits that he still has said abstracts of title and claims the right to the posses-

sion thereof under said contract. It denies that said defendant ever obtained any copy of said contract other than the letter-press copy aforesaid, and admits that said letter-press copy was afterward recorded in the office of the recorder of Cook county; that Lieb having refused to carry out his part of said contract, the defendant was compelled to record said copy in order to protect himself in that behalf.

Defendant Lane also answered the cross-bill of Lieb setting up substantially the same matters alleged in his answer to the original bill, and also filed his cross-bill against said Lesser praying for a specific performance of said contract for a conveyance of said block 18.

Answers and replications to said bill and cross-bills having been duly filed, the cause was heard on pleadings and proofs and a decree rendered finding that said Lieb and Lesser stood ready, and were able, and offered to perform said contract on their part at the time and in the manner therein provided, and that said Lane refused to perform said contract; that said Lieb and Lesser thereupon declared said contract terminated, cancelled and abandoned; that neither said Lieb nor said Lesser anthorized the delivery of said letter-press copy of said contract to said Lane, or the recording thereof; that said Lane had abandoned said contract, and that said record is a cloud upon the title of said Lesser to said block 18 and of said Lieb to said block 17; that all the material allegations of the original bill and of the cross-bill of said Lieb are true, and that the equities are with the complainants in said bills. It was thereupon decreed that said contract is terminated, cancelled and abandoned, and that said Lane has no rights in either said block 17 or 18; and it was ordered that said contract be delivered to the clerk of said court for cancellation and that said check for $500 be returned to said Lane; that the record of said contract be declared null and void, and that said Lane deliver up said letter-press copy of said contract and said abstract of title, and that the cross-bill of said

Lane be dismissed for want of equity. From this decree said Lane has prosecuted an appeal to this court.

Messrs. SEARS & ARND, for the appellant.

Messrs. SWIFT, CAMPBELL & JONES, for the appellee Lesser.

Mr. C. B. SAMPSON, for the appellee Lieb.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

Most of the questions presented by this appeal are questions of fact, in respect to which there is a wide discrepancy between the testimony of the various witnesses. The evidence was taken orally in open court, thus affording the chancellor before whom the cause was heard the means of forming a correct judgment as to the credibility of the respective witnesses, and the weight to be given to their testimony, which an appellate court attempting to review the evidence with only such light as is afforded by the written record can not have. The case therefore is one calling for an application of the well settled rule, that when the trial court has an opportunity of seeing the witnesses and of hearing their testimony as it is delivered orally, the findings of such court upon mere questions of fact, where the testimony is conflicting, will not ordinarily be disturbed on appeal, unless such findings are clearly and manifestly against the preponderance of the evidence. The present case is not one where we are able to find any such preponderance in favor of the appellant, and as the court below has found the facts to be as testified to by the appellees and their witnesses, nothing remains for us to do, so far as the facts are concerned, but to adopt the account of the transactions in controversy given by them and determine whether the case thus made out is sufficient to support the decree.

It seems to be admitted that at the time the contract in question was drawn, Lieb was the owner of said block 17, said block then being incumbered by a deed of trust to one Pat-

térson; that Lesser at the same time was the owner of said block 18, that block being incumbered by a deed of trust to one Cody, and that Byron L. Smith, the receiver of the Traders' Bank was the owner of block 19, which was also incumbered by a deed of trust to A. P. Smith. Lieb at that time had no contract with said receiver for the conveyance of said block 19, said receiver having declined to enter into any executory contract in writing for the conveyance of said block, but he had given said Lieb verbal assurances that upon the payment of a certain price which was then agreed upon, he would convey said block 19 to Lieb or any other person he might designate. There is no pretense that Lieb or Lesser in any way concealed the true state of the title of either of said blocks from Lane, the fair inference being that the exact condition of the title was known to Lane, and that it was understood that Lieb should get control of the title to the three blocks and procure a conveyance thereof to Lane.

The negotiations which finally resulted in the contract in question were first commenced between Lane and Lieb alone, and related to the purchase and sale of block 17 of which Lieb was the owner. Lane however expressed a desire to purchase blocks 18 and 19 in connection with block 17, and the negotiation between Lane and Lieb thereupon proceeded upon the basis of including those blocks also in the purchase. They accordingly had an interview with Smith, the receiver of the Traders' Bank, and were informed by him that he would sell block 19 for $8000; that he would give no written contract of sale, but that if they so desired, he would execute a deed and leave it with any bank they might select to be delivered on payment of the consideration thus agreed upon. As Lane did not then know to whom he might wish to have that block conveyed, the deed was not made out as proposed.

Lane and Lieb also had an interview with Lesser in relation to block 18, and he agreed to sell that block for $8500, of which $4000 was to be paid in cash, and for the remaining

$4500, Lane was to assume the Cody deed of trust. The notes secured by said deed of trust then having a considerable time to run, and no provision being made therein for payment on or before the days of payment thereby fixed, Lane insisted on having said incumbrance satisfied and upon securing the payment of said sum of $4500 by a new mortgage to Lesser for that sum, with notes providing for the payment of the several sums for which they should be given on or before the several days fixed for their maturity. In order to make such change of securities possible, Lesser entered into a negotiation with the holders of the notes secured by the existing deed of trust to induce them to accept payment of their notes at once, and succeeded in obtaining from them an agreement in writing to accept such payment if made on or before May 15, 1889. In drawing up the contract between Lane and Lieb, the time for the conveyance of block 18 was fixed for the same date, doubtless with a view of enabling Lesser to use the cash payment then to be made in paying off the Cody deed of trust. Lieb proposed to also fix the time for the conveyance of lots 17 and 19 for the same day, but to that Lane objected on the ground that he could not arrange to take those blocks before the 1st day of June. The contract was accordingly so drawn as to provide for the conveyance of blocks 17 and 19 on that day.

Abstracts of the title to blocks 17 and 18 were delivered to Lane at the time the contract was executed, and continuations of those abstracts bringing them down to date were delivered to him three or four days later. The abstract of the title to block 19 was not delivered to him until May 10. On May 13, two days before the day fixed for the conveyance of block 18, Lesser called upon Lane to ascertain from him whether he would be ready on the 15th to have the contract performed so far as that block was concerned. Lesser desired this information, as he testifies, so as to be able to arrange with Cody, the trustee in said deed of trust, and the holder of the notes

thereby secured, to be present and receive the money due on said notes and release the deed of trust. At that interview Lane informed Lesser that he would not be ready to close the matter up on the 15th; that he had not yet submitted the abstracts of title to his attorney for examination; that one of the abstracts had come to hand only two or three days before and that he did not care to incur the expense of an examination until he had received them all, so as to have it all made at the same time; that he would deliver the abstracts to his attorney on the day following, and that it would take about ten days to make the examination. On May 24 Lesser called upon Lane a second time and was informed by him that he had not got the abstracts back from his attorney, but hoped to get them the next day. Lesser called upon him again on May 27 and at that time Lane said that he was not ready to perform the contract. Lesser testifies that at that time no objection was made by Lane to the title to said blocks, while Lane swears that he had then obtained the opinion of his attorney, and that there were some objections to the title to block 19, and one or two to the other blocks and that a copy of said objections had been furnished to Lieb who had undertaken to see if they could be obviated; that his attorney had advised him to be careful about block 19, as that, being held by a receiver, was in a different situation from the other blocks. Lane admits that in those interviews, Lesser objected to any delay growing out of the condition of the title to block 19, as he did not know whether the parties secured by the Cody deed of trust would be willing to accept their money after May 15 or not.

The 1st day of June, the day on which the residue of the contract was to be performed, being Saturday, Lane suggested to Lieb that as Saturday was a busy day, and one on which the banks closed earlier than usual, to let the matter go over to Monday. Lieb accordingly notified all the parties to meet at Lane's office on Monday, June 3, between one and

two o'clock p. m., and the parties met on that day according to such notice. Lesser was present having in his hands a warranty deed which had been drawn up in Lane's office, conveying said block 18 to Lane. An agent of the holder of the notes secured by the deed of trust on said block was there with said notes authorized and ready to receive payment of the same, and the trustee in said deed of trust was also present to release said deed of trust in case of payment. At the time these parties arrived Lane was not in his office, and after waiting some time for him, said agent and trustee went away, said trustee leaving word that he would be at his own office, and if sent for would come and release the trust deed. After waiting in his own office for two or three hours and receiving no message, he telephoned over to Lane to know why he had not been sent for and if nothing was going to be done, but received no request to come or to remain longer in waiting. Lieb was also there having in his possession a warranty deed which had been drawn up in Lane's office and executed by Lieb and wife, conveying said block 17 to Lane, and with him was also an agent of the holder of the notes secured by the deed of trust on that block, authorized and ready to receive payment of said notes. The trustee in that deed of trust at the time was absent from the city, but it appears that a successor in trust was named in the deed of trust, and that he was in the city, so that the agent of the holder of said notes, if they had been paid, could have obtained his release in a half hour.

The facts in relation to block 19, as shown by the testimony adduced on behalf of the appellees, are these: One Goodridge, who was the agent of said receiver in negotiating the sale of said block, was in the office of the receiver on said 3d day of June, for the purpose of having the deed of that block made out and executed so that he could take it to Lane's office and hand it to Lieb. In making out the deed, the attorney who was employed to draft it, wished to be positive

37—135 ILL.

and certain about the description of the property, and for that purpose desired to examine the abstract. That document was then in Lane's hands, and the receiver held Lieb's receipt for it. Goodridge stepped to the telephone and asked Lane to send it over, which Lane declined to do. Goodridge then asked him if they could have it if they would send for it, and received a negative answer. On being asked why, Lane responded that he would not let it go out of his hands. Goodridge then went personally to Lane's office to try to get the abstract but Lane refused to let him have it. Lane admits his refusal to loan the abstract, but explains his conduct in that respect by saying, in substance, that he was apprehensive that if the abstract was returned to the receiver, he would claim it, as owner, and refuse to give it back. It seems that upon Lane's refusal to let Goodridge have the abstract to obtain a correct description of the property the drafting and execution of the deed was not proceeded with. It appears however that an arrangement had been made between Goodridge and the trustee in the deed of trust on said lot 19, that as soon as the deed from the receiver was executed, Goodridge was to go to the office of said trustee and have a release of said deed of trust executed by him, and that both were to go to Lane's office and have the matter fixed up.

The evidence as to what took place at the meeting of the parties after Lane came in is conflicting. Lieb, Lesser, Landis their attorney, and Patterson, who was present as the agent of the holder of the notes secured by the deed of trust on block 17, all of whom were examined as witnesses, substantially agree that Lane, after coming in, commenced the interview by stating that Lieb had deceived him in relation to the amount of land contained in the three blocks; that Lieb had represented to him that said blocks contained twenty acres, and that he had bargained for that amount of land, and that said blocks did not contain twenty acres; that he also complained that Seventy-fifth street, which forms the north boundary of said

blocks, was occupied by a railroad, which would spoil the frontage of the lots fronting on that street; that some of the time he claimed that the railroad was on the blocks, and that when Lieb took him to the property and showed it to him, he represented to him that the railroad was not on said property; that he had but just learned the fact of the occupancy of a portion of said blocks by said railroad. Considerable controversy followed in which Lane insisted that he had contracted for twenty acres of land and must have that amount, and that he did not want a railroad on or adjacent to it. Lieb and Lesser, on the other hand, insisted that the three blocks in fact contained the amount of land contracted for, and that the railroad occupied no portion of said blocks. As a result of the discussion, Lane declared that the land was not what he had bargained for, and that he would not take it. These witnesses agree that he placed his refusal to consummate the purchase solely upon the grounds above stated, and that he made no objection to taking the title on the ground that said title was defective or that said deeds of trust had not been actually released. These witnesses also testify that at the close of the interview Landis, acting as attorney for Lieb and Lesser took the deeds conveying blocks 17 and 18 and made a formal tender of them to Lane and that he refused to accept them, and that in reply to the question as to whether he placed his refusal upon the ground that the railroad was on or adjacent to said blocks, he said repeatedly that he did. Lieb and Lesser thereupon declared said contract terminated, and demanded a return of the abstracts of title, which Lane refused. On the same day Lane placed his letter-press copy of said contract on record.

Lane, on the other hand, testified, and in this he is corroborated by one or two other witnesses, that while there was a general discussion about the amount of land included in said blocks, and the occupancy of a portion of the blocks or of the street by the railroad, he did not refuse to perform the contract

on that ground, but that when the deeds of blocks 17 and 18 were tendered him, he objected to taking them on the ground that matters in relation to block 19 were still unsettled, and that the several deeds of trust on said blocks were as yet unreleased; that Lieb and Lesser then said that they had not obtained a conveyance of block 19, and went away saying that he could not have the property anyway.

We are of the opinion that the court below was justified by the preponderance of the evidence in holding that, at the meeting of the parties on the 3d day of June Lane so far abandoned and repudiated said contract as to place it within the power of Lieb and Lesser to rescind the contract, and that they did in fact rescind and terminate it. The evidence warrants the conclusion that Lieb and Lesser had arrangements made with the owner of block 19 and with the holders of the several incumbrances on the three blocks, so as to be able, on that day, to perform the contract on their part, by conveying or obtaining a conveyance to Lane of the three blocks, and by having all of said incumbrances satisfied and discharged, they using for that purpose, as was manifestly intended by both parties they should do, a portion of the consideration which Lane was to pay for said property. They therefore were ready, able and willing to perform the contract on their part, according to its true intent and meaning, and tendered such performance, but Lane peremptorily refused to accept a conveyance and pay the consideration, basing his refusal, not upon any supposed inability on the part of Lieb and Lesser to convey said blocks and give a good title, but upon a claim that the land included in said blocks was deficient in quantity, and that a part of it was occupied by a railroad. Without pausing to determine whether either of these objections, if well founded, would have furnished Lane with a sufficient excuse for refusing to perform, it is sufficient to say that, so far as we have been able to discover, there is no evidence, apart from his mere assertion made at the time, that either of these claims had any

foundation in fact. There is no evidence that there was any deficiency in the quantity of land included in said blocks, nor does it appear that the railroad occupied any portion of the blocks, the evidence being that the railroad was located wholly in Seventy-fifth street. The evidence is uncontradicted that nearly a month before the execution of said contract, Lane went in company with Lieb to said property and examined it, and must therefore have known of the existence and location of the railroad, and of its being in the street bounding said blocks on the north.

It thus appears that Lane repudiated his contract and absolutely refused to perform it, basing his refusal upon grounds which, even if tenable, are not shown to have had any foundation in fact. Such repudiation gave Lieb and Lesser the right, at their election, to declare the contract rescinded and terminated. This they elected to do, and we are of the opinion that their rescission was effectual.

The placing by Lane of his letter-press copy of the contract on record was without authority of law. At the time said copy was recorded the contract itself had been rescinded and no longer had any force or effect. But if this had been otherwise, a mere copy of the contract was not entitled to be recorded, and the placing of it on record was an unauthorized and wrongful act. Our statute, it is true, permits the recording of all instruments relating to or affecting the title to real estate although not acknowledged, but a mere copy of a contract is not an instrument relating to or affecting the title to real estate. It has no legal validity and is not an instrument of which the law can take any notice. The original alone is entitled to be recorded, and the imposition upon the recorder of a copy in place of the original is, to say the least, a fraudulent act.

The original had been placed in the hands of third parties to be held in escrow, and was therefore not within the control of either of the parties, and neither had the right, at his own

pleasure, to have it placed on record. Placing a mere private and unauthenticated copy on record, and thus making a record which, so far as any one examining it could discern, was a transcript of the original, was a tortious clouding of the title, and was an act for which a court of equity should afford a proper remedy, whether the original contract still remained in force or not.

We are of the opinion that the decree is sustained by the evidence, and it will therefore be affirmed.

*Decree affirmed.*