MARIE VALTER

*v.*

EDWARD BLAVKA *et al.*

*Opinion filed April 16, 1902.*

1. DEEDS—*presumption in favor of delivery in case of voluntary settlement is strong.* The presumption in favor of the delivery of a deed in case of voluntary settlement is stronger than in ordinary bargain and sale, and the fact such deed has been recorded is *prima facie* evidence of its delivery.

2. SAME—*when grantor's possession of a deed is not inconsistent with delivery.* If the grantor in a voluntary conveyance reserves a life estate in the property and its possession and control, the mere fact that she retains the deed in her possession after its being recorded is not inconsistent with the idea that delivery was intended at the time of its execution, where the grantees were present in the notary's office when the deed was drawn and assisted in its preparation, the deed being left, by common consent, with the notary, who had it recorded and then returned it to the grantor.

3. SAME—*power of revocation not indispensable to a voluntary conveyance.* The absence of a power of revocation in a voluntary conveyance, or the absence of advice as to the insertion of such a power, does not afford ground in equity to set aside the deed.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

This is a bill, filed on January 21, 1901, in the superior court of Cook county by the plaintiff in error, Marie Valter, against her four children, Edward Blavka, Josef Blavka, Emil Blavka and Anna Straka (formerly Anna Blavka) for the purpose of setting aside, and declaring to be void, a deed made by her on October 13, 1896, conveying to her said children lot 30 in Douglas Park Boulevard Bohemian Land Association subdivision in north-west quarter, section 23, town 39 north range 13, and removing said deed as a cloud upon her alleged title to said lot. In her bill plaintiff in error avers that she applied to one Robert L. Pitte, a notary, and requested him to prepare for her a will devising said lot, but that

he advised her to make a deed instead of a will; that he presented to her a blank deed, and requested her to sign it, which she did; that the deed was blank as to grantees and as to property when she signed it, and was left by her in that condition, and that Pitte afterwards inserted the description of said lot and the names of her children as grantees; that, on November 4, 1896, Pitte, without her knowledge or consent, recorded said deed; that she never gave him any authority to record it; that the deed was without consideration; that, after it was recorded, Pitte sent it to her, and she has ever since that time had actual possession of it; that none of the grantees have ever had possession or control of it; that she has had, ever since that time, and has now the actual and exclusive possession of said lot; and that she has applied to the grantees to release said deed but they have refused to do so. The defendants in error answered the bill, admitting that plaintiff in error owned lot 30 on and prior to October 13, 1896, but denying all the other allegations of the bill.

On July 15, 1901, the superior court entered a decree, finding that on October 13, 1896, plaintiff in error was the owner of said lot; that on that date she duly signed, sealed, acknowledged and delivered to her said children her deed, conveying said lot to them; that at that time one of said children was a minor and living with plaintiff in error; that she reserved to herself a life interest in said lot; that no fraud or undue influence was employed to induce her to sign and deliver said deed, but the same was signed and delivered as a voluntary settlement between her and her said children; that the allegations in the bill, that the notary presented to her a blank form of deed, which was blank as to the grantees and as to the property to be conveyed, and that the notary inserted therein the description of the property and the names of the grantees after she signed the deed, are untrue; that, when she executed the deed, the same was

fully filled out with the names of the grantees, the consideration, and the description of the property; that the notary fully explained to her the effect of such deed, and told her the same could not be revoked or recalled after it had been executed and delivered; that it was her intention at that time to execute and deliver the deed to her children; that the deed is her valid deed; and that the title to the property, subject to her life interest in the same, was duly conveyed to, and is now in, the defendants in error. The court thereupon ordered that the bill be dismissed. The present writ of error is prosecuted from such decree dismissing the bill.

JONES & LUSK, for plaintiff in error.

BRODE B. DAVIS, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The contention of the plaintiff in error in this case is, that her deed to her children, dated October 13, 1896, and conveying the lot in controversy, was and is void for want of delivery; and also that it was and is void as a voluntary conveyance for certain reasons hereinafter stated.

*First*—The questions as to the delivery of the deed, and whether or not it was a voluntary conveyance, are so connected and interwoven, that it is impossible to discuss them separately. There are, however, certain objections, urged against the deed as a voluntary conveyance, which will be reserved for further consideration hereafter. We think that, under the facts of the case, the deed was, and was intended by the plaintiff in error to be, a voluntary conveyance to, or settlement upon, her children, defendants in error, and that that fact must be kept in mind in determining whether there was or was not a delivery of the deed.

The facts in regard to the execution of the deed are substantially as follows:

On October 13, 1896, plaintiff in error was the owner of lot 30 here in controversy, and at that time was a widow, named Marie Blavka. It was then, and for some time prior thereto had been, her intention to marry a man by the name of Valter. On October 22, 1896, she did marry Valter, and her name is now Marie Valter. Her children were opposed to her marriage, and one or more of them give as a reason for such opposition, that the man she was about to marry was a drunkard. There is some evidence, tending to show that the homestead lot, owned by the plaintiff in error, having a house upon it in which she lived, and also the lot 30 in question, were partly paid for with money earned by her children, the oldest of whom, when the deed was executed, was thirty years of age, and the youngest, a minor nineteen years of age. By arrangement between herself and children, she agreed to convey to them the homestead lot, known as 689 May street in Chicago, and which cost $4050.00 and was clear of encumbrance, reserving to herself a life interest in the homestead lot, or the use of the same during her life, with the privilege of drawing the rents.

On October 13, 1896, she and her four children went together to the office of the notary, Pitte. She claims that she desired Pitte to draw a will for her, but that he advised her to make a deed instead of a will. In this, however, she is not sustained by the weight of the evidence. Pitte drew a deed, conveying the homestead lot to the children, in her presence and in their presence, which deed was signed and acknowledged by her in their presence, and contained a provision reserving to her a life estate in the homestead lot. After the deed to the homestead lot was drawn, some conversation occurred between her and her children in reference to the other lot, which is the lot 30 here in controversy. She then

told them that she would convey to them lot 30 upon the same terms and conditions, upon which the homestead lot had been conveyed to them. She told the notary to draw a deed, conveying lot 30 and disposing of it in the same way as the homestead lot had been disposed of. She and her daughter then left the notary's office, and went home to get the papers necessary to be used in drawing the second deed. They returned with the papers to the office of the notary, and he, on the same day, drew a deed conveying lot 30 to the children, and this deed was there executed by her. The notary says that all the children were present when the second deed was executed, as well as when the first was executed, although there is some evidence, tending to show that one or two of the children did not remain to witness the execution of the second deed; but they were all present at the execution of the first deed; and it was understood there and then between all of them and their mother, that the second deed was to be of the same tenor and purport as the first. The deed then executed, conveying lot 30, contained the following provision: "The above conveyance is made by grantor on condition that she reserves for herself possession, use and all benefit derived from above mentioned real estate during her natural life."

When the deeds were signed and acknowledged by the plaintiff in error, they were left with the notary. Subsequently, on November 4, 1896, he recorded them. Subsequently, and in about three weeks, he sent word to her or wrote a letter to her, informing her that the deeds had been recorded, and were ready for her. She thereupon went to his office and obtained the deeds.

The recording of a deed is *prima facie* evidence of a delivery of it. (*Dale* v. *Lincoln,* 62 Ill. 22; *Stiles* v. *Probst,* 69 id. 382; *Himes* v. *Keighblingher,* 14 id. 469; *Union Mutual Ins. Co.* v. *Campbell,* 95 id. 267; *Harshbarger* v. *Carroll,* 163 id. 636). But this *prima facie* evidence of delivery from the recording of a deed may be rebutted by testimony. (*Union*

*Mutual Ins. Co.* v. *Campbell, supra*). In the present case, counsel for the plaintiff in error insist upon two circumstances as having the effect of overcoming the *prima facie* proof of delivery made by the recording of the deed. One of these circumstances is the fact, that the plaintiff in error took possession of the deed after it was recorded, and has ever since had possession thereof. The other circumstance is an alleged want of authority on the part of the notary to record the deed. In other words, it is claimed that the notary recorded the deed without any instructions from the plaintiff in error to do so, and without her knowledge or consent.

The deed here was in the nature of a voluntary settlement of the property in question by the plaintiff in error upon her children, one of whom was a minor. Her intention was, as is clearly shown by the proof, to convey the property to her children with a reservation of a life estate therein in herself. The law always makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale. (*Rodemeier* v. *Brown,* 169 Ill. 347). In such cases, "the presumption of law is in favor of the delivery, and the burden of proof is on the grantor to show clearly that there was no delivery." (*Bryan* v. *Wash,* 2 Gilm. 557; *Masterson* v. *Cheek,* 23 Ill. 72; *Walker* v. *Walker,* 42 id. 311). It is to be noted that, here, when the deed of lot 30 was executed and left with the notary, or when instructions were given to him as to its contents and execution and the disposition to be made of it, the grantees in the deed, children of the plaintiff in error, were present. They went to the notary with their mother for the express purpose of having the deeds executed, and remained until they were so executed, and the deeds were left with the notary as much by them as by their mother, the grantor therein. The evidence tends to show that the notary, in the matter of the custody and possession of the deeds—whether for the purpose of recording them or otherwise—was as much

the agent of the grantees in the deeds as of the grantor therein. The authorities recognize a difference between cases where the grantee is not present at the time of the execution of the deed, and is not aware of its existence until after its execution, and cases where the grantee is actually present at the time of the execution, and has taken part in the preliminary preparation for the execution of the deed, and knows of and assents to the recording of it. (*Wiggins* v. *Lusk*, 12 Ill. 132; *Souverbye* v. *Arden*, 1 Johns. Ch. 240). In *Souverbye* v. *Arden*, *supra*, it was held that, if "both parties are present and the usual formalities of execution take place, and the contract is to all appearance consummated, and the deed is left in the power of the grantee, or in the custody of his particular friend without special instructions, there is no case to be found in law or equity in which such a delivery is not held binding. The act of recording a deed is evidence, to a certain extent, of a delivery to and an acceptance thereof by the grantee, when it appears that the grantee assents to the act of recording and knows of it." (*Thompson* v. *Dearborn*, 107 Ill. 87; *Wiggins* v. *Lusk*, 12 id. 132; *Herbert* v. *Herbert*, Breese, 354; *Shields* v. *Bush*, 189 Ill. 534). It is quite clear from the proof in this case, that the defendants in error, the grantees in the deed, knew of and assented to the recording of it.

"In cases of voluntary settlements, the mere fact, that the grantor retains the deed in his possession, is not conclusive against its validity, if there are no other circumstances besides the mere fact of his retaining it, to show that it was not intended to be absolute." (*Cline* v. *Jones*, 111 Ill. 563; *Rodemeier* v. *Brown*, 169 id. 347). We discover no other circumstances, besides the mere fact that the plaintiff in error obtained and retained possession of the deed after it was recorded, which show that it was not her intention to have it take effect as a transfer of the property to her children, subject to her life estate. Her possession of the property was consistent with the terms

of the deed, which gave her the use of the property during her life. (*Douglas* v. *West*, 140 Ill. 455).

The fact, that the deed contained a provision, reserving to the plaintiff in error a life estate in the property and the right to use the property and draw the rents thereof during her natural life, made it natural that she should retain the possession of the deed.   As the owner of a life estate in the property, she had an interest in it, which entitled her to hold the deed.   Where the grantor in a deed is a beneficiary thereunder, his possession of the deed does not, under the circumstances of the case, create any presumption against the idea that a delivery was intended at the time of the execution.   (*Scrugham* v. *Wood*, 15 Wend. 545; *Linton* v. *Brown's Admr.* 20 Fed. Rep. 455; *Reed* v. *Douthit*, 62 Ill. 349; *Bunn* v. *Winthrop*, 1 Johns. Ch. 334).   In *Bunn* v. *Winthrop*, *supra*, it was said by Chancellor Kent: "The instrument is good as a voluntary settlement, though retained by the grantor in his possession until his death.   There was no act of his, either at the time or subsequent to the execution of the deed, which denoted an intention contrary to that appearing upon the face of the deed."

In the present case, the plaintiff in error testifies that she did not instruct the notary to record the deed, and her testimony is confirmed by that of the notary; but three witnesses swear, that the plaintiff told the notary to record the deed, and one of them says that she also told the notary to let her know when it should be recorded.   The deed was left in the possession of the notary, and it is hardly conceivable that it could have been left for any other purpose than for the purpose of having it recorded.   The testimony of the complainant is very much weakened by the fact, that she is contradicted in many respects by all the other witnesses.   For example, she swears that she signed the deed when it was blank, both as to the name of the grantee and the description of the property.   Both the notary, and all her children,

swear that the deed was filled out, and was complete in every respect when she signed it. She also swears, that she did not know until two or three years afterwards that the deed was recorded, when the testimony shows that she came to the office of the notary in about thirty days after its execution, and was then informed that it had been recorded; and she then made complaint that the notary, in his charge for services, included a charge for money advanced for the recording of the deed. In *Souverbye* v. *Arden, supra,* it was said by Chancellor Kent: "In that case the deed was sealed in the presence of the grantee and others, and was read but not delivered; nor did the grantee take it, but it was left behind in the same place, and yet, in the opinion of all the justices, it was a good grant, for the parties came together for that purpose and performed all that was requisite for perfecting it, except an actual delivery; being left behind and not countermanded, it was held to be a delivery in law. * * * A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, nor intended to part with the possession of the deed; and, even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances, beside the mere fact of his retaining it, to show that it was not intended to be absolute."

The chancellor below saw the witnesses and heard them testify, and although there is some conflict in the testimony, we are not disposed to disturb his findings upon the questions of fact here involved, as such findings are not clearly and manifestly against the preponderance of the evidence. (*Lane* v. *Lesser,* 135 Ill. 567; *Burgett* v. *Osborne,* 172 id. 227).

It has often been said that the question, whether there is a delivery of a deed or not, depends greatly upon the intention of the grantor; and this intention may be manifested by acts and declarations of the grantor,

and by the circumstances attending the execution and the custody of the deed. (*Shields* v. *Bush, supra; Walls* v. *Ritter,* 180 Ill. 616; *Walter* v. *Way,* 170 id. 96; *Shults* v. *Shults,* 159 id. 654). In the case at bar, it is clear from the evidence that the intention of the plaintiff in error was to give the property to her children with the exception that she was to retain the use of it during her life. Her intention was to put the fee out of herself, so that her children would be in no danger of losing it, and so that she would not be persuaded to dispose of it by the man she was about to marry.

Taking into consideration all the facts and circumstances developed by the evidence, we are of the opinion that there was a delivery of the deed in controversy. (*Russell* v. *Baptist Theological Union,* 73 Ill. 337; *Blackman* v. *Hawks,* 89 id. 512; *Oliphant* v. *Liversidge,* 142 id. 160; *Douglas* v. *West,* 140 id. 455; *Jamison* v. *Craven,* 4 Del. Ch. 328; *Fitzgerald* v. *Fitzgerald,* 100 Ill. 385; *Watson* v. *Watson,* 118 id. 56). None of these presumptions have been overcome by the testimony introduced by the plaintiff in error.

*Second*—It is claimed on the part of the plaintiff in error, that the deed in question was not a voluntary settlement, because it contained no power of revocation. While many of the English authorities, cited by counsel for plaintiff in error, appear to hold that a power of revocation ought to be inserted in such a settlement, or the settlor should have been advised that there should be a power of revocation inserted in it, yet this court has held, that there is no such rule, as that the want of a power of revocation in a voluntary settlement, or the want of advice as to the insertion of such a power, will afford ground in equity for the donor to set aside such a settlement; but that the same is a circumstance, and a circumstance merely, to be taken into account in determining upon the validity of the settlement, and of more or less weight according to the facts of each particular case. (*Finucan* v. *Kendig,* 109 Ill. 198; *Lawrence* v. *Law-*

*rence,* 181 id. 248). In *Lawrence* v. *Lawrence, supra,* we said: "It is not indispensable to a voluntary settlement it should contain a power of revocation."

The evidence here shows that those conditions and circumstances existed, the absence of which is alleged by counsel for plaintiff in error to militate against the theory of a voluntary settlement. The notary fully explained to the plaintiff in error the force and effect of the conveyance which she executed. She was not without legal advice, because the testimony shows that she consulted a lawyer in reference to the transfer to her children before she went to the notary on October 13, 1896, to make the deed. It is not alleged in the bill, nor does the evidence show, that she was induced to make the deed by any undue influence brought to bear upon her by her children. The deed here was made by a parent to children. In the case of a gift from a child to a parent, undue influence may be inferred from the relation itself, but never where the gift is from the parent to the child. (*Oliphant* v. *Liversidge, supra*). She signed the deeds willingly. She expressed some doubt whether her contemplated marriage would be a happy one; and uncertainty as to the consequences of her marriage operated more upon her mind to induce her to make the deed or deeds than any influence exercised over her by her children. She was a woman of good business capacity, and, in her business as a keeper of boarders, had made money and accumulated property. She was not a woman of weak mind or capable of being easily imposed upon. One of the witnesses swears that she told him, that the children really deserved the property, and she wanted to give them their share for their work, and for what they paid in the "building association," through the aid of which the property had been secured. The evidence tends strongly to show that the effort, now made to recover back the property, is prompted by the husband of the plaintiff in error, and that the very danger, which

she sought to guard against by the execution of the deed, has actually arisen.

We see no reason for reversing the decree entered by the court below. Accordingly, the decree of the superior court of Cook county is affirmed.     *Decree affirmed.*