JACOB D. HESS, Exr.

*v.*

FINIS KILLEBREW *et al.*

*Opinion filed April 20, 1904.*

1. APPEALS AND ERRORS—*chancellor's findings of fact in trial without jury will not be lightly disturbed.* The chancellor's findings of fact from conflicting oral testimony heard in open court without the intervention of a jury will not be disturbed, on appeal, unless clearly against the preponderance of the evidence.

2. SAME—*when chancellor's findings are entitled to the same weight as though there were no jury.* Findings of fact by the chancellor from a transcript of the testimony on a former jury trial at which he presided are entitled to the same weight as though he had originally heard the case on oral testimony without a jury.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

This is an appeal from a decree of the circuit court of Pike county, rendered at the June term, 1903, setting aside an instrument dated January 18, 1902, which had been admitted to probate in that county as the will of Levi Killebrew, deceased, who departed this life on the 26th day of January, 1902, leaving as his heirs-at-law his children Finis Killebrew, William Killebrew, Zerilda Burbridge, and his grandchildren, Albert Smith, Burton Smith and Francis M. Smith, children of a deceased daughter, who were complainants in the bill to set aside the will, and his children Spencer Killebrew, Pearlina Hamner and Robert Killebrew, who, with John Hamner, the husband of Pearlina, and Jacob D. Hess, executor and trustee under the will, were the defendants to the bill.

The first clause of the will creates a trust in Jacob D. Hess, the executor, conveying to him the real estate of the deceased, consisting of about three hundred and twenty acres of land; authorizes him to lease the same and collect the rents, issues and profits therefrom and pay the expenses of maintenance of the land for the

period of fifteen years, and at the end of that period to divide the land, according to the best judgment of the trustee, among Spencer Killebrew, Pearlina Hamner and Robert Killebrew, or their children.

The second clause bequeaths to the trustee all the personal property of the deceased, and directs him to convert it into cash within five years after the death of Levi Killebrew.

The third clause directs that the proceeds of the personal property, together with the net amount of money arising from the rents, shall be loaned or re-invested by the trustee, as his judgment dictates, until the end of the fifteen-year period, when it is to be distributed, according to the judgment of the trustee, among the same persons to whom the land is to pass at that time.

The fourth clause recites that his heirs, other than the three named in the first clause of the will, have already received their shares of his estate.

The will, which was drawn by Jacob D. Hess, was admitted to probate on June 30, 1902, and the bill to set it aside was filed on October 8, 1902, the grounds of the contest being, that at the time of the execution of the instrument in question Levi Killebrew was not of sound mind and memory, and that it was the result of undue influence exercised by Pearlina Hamner and members of her family. Spencer and Robert Killebrew answered, admitting the incapacity of Levi Killebrew to make the will in question. Pearlina Hamner and Jacob D. Hess answered, denying the mental incapacity and denying the exercise of undue influence. At the April term, 1903, complainants amended their bill by averring that defendants were each estopped from claiming under said pretended will, for the reason that on January 29, 1902, all the heirs of the deceased, including all the devisees named in the will, excepting the trustee, joined in a contract providing that any will made by the deceased should be considered null and void, and that the prop-

erty of the deceased should be divided among his heirs as in case of his intestacy. To this amendment a demurrer was sustained. At the same term the cause was tried and the jury disagreed and was discharged. Thereupon the parties entered into a stipulation providing that a jury be waived, and that the cause be submitted to the judge of the court upon the evidence which had been submitted to and heard by the jury, the same as if the said evidence had been addressed to the court on a trial by the court without the intervention of a jury, and provided that the stenographer should furnish to the court the transcript of the evidence which had been heard by the jury. At the June term, 1903, the court found that the writing in question was not the last will and testament of Levi Killebrew, for the reason that at the time of its execution he was of unsound mind and mentally incapable of making a will, and a decree in accordance therewith passed setting the same aside and declaring the proceedings by which it was admitted to probate null and void. Jacob D. Hess, as executor, alone appeals.

W. H. CROW, FRANK S. DULANEY, and WILLIAM MUMFORD, for appellant.

JEFFERSON ORR, A. CLAY WILLIAMS, and EDWARD YATES, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is assigned as error that the court erred in holding that the burden of proof was on proponents to show, by a preponderance of the evidence, that the testator was of sound and disposing mind when he made the purported will. Appellant fails to indicate by a reference to the record where any such holding is evidenced. No propositions of law were submitted by either party to be passed upon by the court, and the question under consideration does not seem to arise upon this record.

The other assignments of error may be included in the general statement made by appellant that the finding of the court is contrary to the evidence.

For the purpose of establishing the mental capacity of the testator proponents took the testimony of twenty-nine witnesses, and on this question twenty-six witnesses testified on behalf of contestants. As is usual in such cases, the testimony is contradictory and irreconcilable.

Levi Killebrew, at the time he executed this instrument, was seventy-six years of age. He had been a farmer all his life and for a considerable period had been a widower. He had been suffering from a cancer of the face for a number of years, and this finally caused his death. A few weeks prior to his decease, while on his way to Pittsfield, he stopped at the residence of his daughter, Pearlina Hamner, intending to pass the night with her and then proceed on his way. The next few days, however, were so cold and disagreeable that he did not venture out, but became weaker and thereafter was unable to leave. His condition from that time to the time of his death was pitiable. One of his eyes was eaten out entirely, and the flesh on that side of his face, from the eye to the corner of his mouth, was gone. The bone of the jaw on that side was also bare. He soon after became confined to his bed and there remained until the time of his death. He was greatly distressed by an accumulation of phlegm in his throat, and on account of the condition of his face was unable to relieve himself. He was unable to drink in the ordinary way, and water was given him from a bottle, the mouth of which was passed into the back part of his mouth. He was a great sufferer, gradually growing weaker, and died eight days after the execution of the purported will.

Appellant urges that the witnesses who gave opinion evidence in favor of the testamentary capacity of the deceased were more credible and better informed than those testifying favorably for the contestants. So far

as we are able to determine from the record there is no basis for this conclusion. Several of those testifying on behalf of the appellant were closely allied to Pearlina Hamner, and the testimony of several others is not of that positive character that carries conviction. The subscribing witnesses to the will, Thomas Harpole and Vinton E. Smith, when called by the proponents, merely identified their signatures to the attestation clause. Later they were called by contestants. Harpole then testified that he had known Levi Killebrew ten years; that he sat up with him three or four nights during his last illness; that at times he seemed rational and at others he did not; that witness could not swear that he was of sound mind when he executed the will. Smith, called by contestants, testified that he also watched with Killebrew several nights about the time the will was executed and that he was exceedingly feeble, and the witness stated that he was unable to testify that the deceased was of sound mind and memory when he executed the instrument in question. Two physicians, who appear to be entirely disinterested and men of intelligence, testified that they saw him in his last illness, and, in substance, that he was not of sound mind. It also appears that the deceased intelligently transacted some matters of business down almost to the time of his death, and even after he came to his daughter's house on this last occasion, but that one of his sons for several years had generally attended to his business affairs. Evidence on the part of the contestants tended to show that his mind had been failing for several years. Witnesses of apparently equal respectability, candor and fairness testified on both sides of this case on the principal question involved, and we have been unable to join with appellant in the conclusion that those for proponents are shown to be more credible or to have had better opportunity for forming correct opinions.

It is then urged that the circumstances are all in favor of the testamentary capacity of the deceased, and the basis of this argument is found in the evidence to the effect that at and about the time of the execution of the will and during his illness at his daughter's, Levi Killebrew transacted some small matters of business. These were of trifling character, such as furnishing money to pay interest on a mortgage, and to pay taxes, and to buy food for stock. We do not regard them as of controlling importance, especially in view of the fact that he said and did things during the same period inconsistent with sanity. In January, for example, when his son called his attention to a lack of food for the stock, he told him to sharpen the sickle and go out and mow some grass for them. His statement to Mr. Hess, at the time the will was drawn, that certain of his children had received their shares from his estate, seems to have been a delusion, as none of them had received from him any substantial amount.

It is then urged that the evidence for the contestants did not meet that offered for the proponents. Those who testified on behalf of the defendants generally gave it as their opinion that Levi Killebrew had mental capacity "to transact ordinary business" at the time of the execution of the will, which would include, or be, as great a capacity as was required to make this testamentary disposition of his property, and it is urged that the witnesses who testified for the complainants expressed the opinion that Killebrew did not have mental capacity "to transact ordinary business," and it is said that this was too high a test; that a man might not have mental capacity to transact ordinary business and still have testamentary capacity; that the evidence for contestants therefore entirely fails to show a want of testamentary capacity; and in this connection we are referred to the case of *Waugh* v. *Moan,* 200 Ill. 298, where it is said (p. 303): "If a testator has capacity to transact ordinary

business, the presumption arises that he is capable of doing any act requiring no greater capacity, which would include the act of making a will; but the converse of this proposition is not true, and it cannot be said, as a matter of law, that because incapable of transacting ordinary business a person is incapable of making a testamentary disposition of his estate." We have examined the questions propounded to the witnesses on behalf of the contestants and find that they are not the same in every instance. In some cases the inquiry was whether Levi Killebrew was able to transact business, which would mean any business, and a response in the negative would deny testamentary capacity. Some of the witnesses testified that he was crazy; another that he was mentally deranged; others that he was not right in his mind. Many of them detailed occurrences and transactions from which the conclusion might very properly be drawn that the testator lacked testamentary capacity. While appellant's statement of the law in this regard is correct, the record is not in such condition as that the application of that legal proposition necessitates or authorizes a reversal.

When this case was tried before the jury, Hon. Harry Higbee, one of the judges of that circuit, presided, and under the stipulation the case was tried by the same judge upon the evidence which had been heard by the jury, and it is contended that the finding of facts is not entitled to the same weight, when reviewed in this court, as it would have been had the evidence been heard by the chancellor with a view of determining what the facts were in the first instance, and it is said that as the stipulation provided for the making of a transcript of the testimony, which, in accordance with the provisions of the stipulation, was submitted to the chancellor to be used by him in determining the cause, his finding should be treated as though the evidence had all been taken by depositions and he had not enjoyed the advantage of

seeing and hearing the witnesses testify. The chancellor who presides at the trial of a question of fact before a jury must necessarily observe the appearance and demeanor of the witnesses upon the stand for the purpose of qualifying himself to pass upon a motion for a new trial, which may be based upon the ground that the verdict is against the preponderance of the evidence. He thereby necessarily obtains the same impressions in reference to the credibility of the various witnesses that he would obtain if he were hearing the testimony for the purpose of determining himself what the facts were. In the one instance he must determine what witnesses are worthy of credit to enable him to determine whether the verdict should stand. In the other he must use precisely the same means to advise himself what weight should be given to the testimony of those who speak from the witness stand, to enable him to determine what the finding of fact should be. In this case the determination of the presiding judge in reference to the facts is entitled to the same weight as though he had heard the evidence without the intervention of a jury.

Where the trial court, in a trial without a jury, has had an opportunity of seeing the witnesses and of hearing their testimony as it is delivered orally, the findings of such court upon mere questions of fact, when the testimony is conflicting, will not ordinarily be disturbed, on appeal, unless such findings are clearly and manifestly against the preponderance of the evidence. *Lane* v. *Lesser,* 135 Ill. 567; *Burgett* v. *Osborne,* 172 id. 227; *Delaney* v. *Delaney,* 175 id. 187; *Phelan* v. *Hyland,* 197 id. 395.

In our judgment, so far as we can determine from the record, the evidence in this case not only does not clearly and manifestly preponderate against the finding, but does not preponderate against it at all.

The appellees ask that a judgment be rendered here against the appealing executor, in his individual capacity, for the costs of this court. The judgment here will

be against him in his capacity as executor. If, when he presents his account current to the county court, he asks credit for money paid in satisfaction of that judgment, the question whether he should be allowed to charge the estate with the money so paid will arise and will be an open one, if exception be taken to the report, in that respect, by any person interested in the administration of the estate.

The decree of the circuit court will be affirmed.

*Decree affirmed.*