# John C. Schumacher, et al., v. William H. Wolf.

## Gen. No. 12,060.

1. FINDINGS OF CHANCELLOR—*when not disturbed.* The findings of the chancellor upon questions of fact will not be disturbed unless clearly and manifestly against the preponderance of the evidence.

2. PAYMENT—*when made at payor's risk.* The person obligated to pay a note secured by mortgage makes payment thereof at his own risk where he makes such payment without seeing the note.

3. HOMESTEAD LOAN ASSOCIATION—*what notice to.* Notice to the secretary of a homestead loan association is in law notice to such association.

4. EQUITABLE ASSIGNEE—*to whom required to give notice of rights under trust deed.* The rule requiring notice to be given by the assignee of a mortgage does not require it to be given to third persons unknown to the assignee, but only to the mortgagor.

5. SUBROGATION—*when doctrine of, cannot be invoked.* A defendant who has not by answer or cross-bill claimed the benefit of the doctrine of subrogation and who has not by assignment of error called in question the failure to apply such doctrine, cannot on appeal assert the right to the application thereof in his favor.

Foreclosure proceeding. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed October 16, 1905.

GEORGE W. HESS, for appellants.

J. G. GROSSBERG, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

October 20, 1903, appellee filed a bill against the Abraham Lincoln Building, Loan and Homestead Association, Mollie Schumacher, John C. Schumacher, Maude E. Hennan, Minna Paulsmeir and others to procure the release of a trust deed, alleged to have been fraudulently executed, can-

celled and set aside, and for a foreclosure of the trust deed. The Abraham Lincoln etc. Association, John C. Schumacher and Maude E. Hennan answered the bill, and Mollie Schumacher, by leave of court, adopted their answer, and replications were filed to the answers.

March 11, 1904, appellee filed a supplemental bill, alleging, in substance, that since the filing of the bill an interest note or coupon fell due. The cause was heard on the pleadings and on evidence produced in open court, and a decree was rendered substantially in accordance with the prayer of the bill, from which the Abraham Lincoln etc. Ass'n, John C. and Mollie Schumacher and Maude Hennan appealed.

Charles C. Schumacher, who died May 3, 1903, before the filing of the bill, John C. Schumacher and Henry Schumacher were brothers, Mollie Schumacher is the wife of John C. Schumacher, and Maude Hennan is the daughter of John C. and Mollie Schumacher. John C. Schumacher was, at the time of the transactions hereinafter mentioned, the owner of 90 shares of stock in the Abraham Lincoln etc. Ass'n, and his brother Henry was his clerk and was also his assistant in the secretaryship. Humboldt von Horn, against whom the bill was taken as confessed, was the attorney of the Abraham Lincoln etc. Association, and an intimate friend of John C. Schumacher. A knowledge of these relations is necessary to an intelligent understanding of the case.

May 5, 1892, Humboldt von Horn executed his promissory note for the sum of $900, payable to his own order three years after the date thereof, with interest at the rate of seven per cent. per annum, payable semi-annually, and also executed six like promissory notes for the semi-annual interest. To secure the indebtedness so evidenced von Horn executed to Charles C. Schumacher a trust deed of lots 5 to 10, both inclusive, in block 46 in Schumacher & Graedinger's Addition to Chicago, in Cook county, Illinois. Von Horn endorsed the notes and delivered them and the trust deed to Charles C. Schumacher, the trustee. The trust deed was recorded May 11, 1892. John C. Schumacher was the

owner of the premises described in the trust deed, and the mere naked legal title was vested in von Horn for John C. Schumacher's convenience. It is admitted by appellants' counsel that, apparently, the legal title was vested in von Horn for the purpose of procuring the loan of $900 from his brother Charles, and by John C. himself; that von Horn had nothing to do with the transaction except as his friend. The premises, at the time of the execution of the trust deed, were subject to a prior mortgage to one Simpson Dunlap to secure payment of $1,230. Shortly after the execution of the notes and trust deed by von Horn, they were sold by Charles C. Schumacher to appellee Wolf. This is admitted by appellants' counsel in his argument. May 4, 1901, von Horn executed an agreement extending the time of payment of the principal note three years, or until May 5, 1904, and at the same time executed six promissory notes for $27 each, payable semi-annually, for the semi-annual interest, at the rate of six per cent. per annum, to fall due after the date of the extension.

Charles C. Schumacher, March 5, 1902, executed a release to Humboldt von Horn of the trust deed, which release was recorded March 18, 1902. May 9, 1892, von Horn conveyed by warranty deed the premises in question to Mollie Schumacher, the wife of John C. Schumacher, which deed was recorded June 14, 1894. August 15, 1902, Mollie and John C. Schumacher quit-claimed lots 5 and 6 in question to von Horn, and the latter, August 18, 1902, quit-claimed the same lots to Maude E. Hennan, the daughter of Mollie and John C. Schumacher. There was no consideration for either quit-claim. February 27, 1902, Mollie and John C. Schumacher executed a trust deed to August F. Schultz as trustee, conveying lots 7, 8, 9, and 10 in question, expressed to be to secure an agreement with the Abraham Lincoln Loan and Homestead Association, wherein said John C. Schumacher acknowledges that he has borrowed from said Association the sum of $6,000, and agrees to pay the same according to the rules of the Association.

It is not contended that the decree is not sustained by the findings of the court, but that the decree is erroneous in finding the lien of the trust deed from Mollie Schumacher and her husband to August F. Schultz subordinate to that of the trust deed from von Horn to Charles C. Schumacher, purchased by appellee Wolf.

There can be no doubt, on the evidence, that the release of the last mentioned trust deed by Charles C. Schumacher, the trustee, March 5, 1902, was fraudulent, as the said Charles, at said date, must have known that he had transferred the note and trust deed to appellee. The court, in the decree finds that Charles C. Schumacher fraudulently, and without authority, released the trust deed, and that the Abraham Lincoln etc. Association had notice of this. It does not appear from the evidence that appellee Wolf gave notice either to von Horn or John C. Schumacher that he had purchased the note and trust deed, and it is not claimed on his behalf that he gave such notice. Therefore, appellants' counsel contends, on the authority of Otis v. Cummings, 31 Ill., 183, and other cases following that case, that appellee's lien must be subordinated to that of the Association. This, however, does not follow. The object of notice is to inform the party notified, and if the information is obtained in any way other than by formal notice, the object of notice is attained. Charles C. Schumacher and John C. Schumacher were brothers, and were in partnership from 1871 till 1888, and after the last date and up to 1892, John C. had dealings with Charles other than the one in question. He was familiar with Charles' business, knew that it was largely the brokerage business, and that he made investments for clients and customers, and sold papers. The following question was asked him and answer given: Q. "Was there anything different about this loan from any other loan that he made, that would lead you to the belief that this special money was his money?" A. "None whatever; my presumption would be, that he would make the loan and sell the paper, if he sold it at all."

The principal note, which John C. Schumacher claims

he paid at Charles C.'s office, when he got the release, was not at that office. Wolf testified that he kept it at his house, and this is uncontradicted. John C. Schumacher substantially admits that he did not inquire for or see the note when he claims he paid it, and that he had not seen it up to the time of the hearing. Q. "It would not have been much trouble, right there at Charles' office, when you paid the money to him, to have gotten the note, would it?" A. "It would not have been any trouble, but I never thought of doing it. I never had occasion before to do it."

There was no evidence that John C. Schumacher ever saw the trust deed after its delivery to his brother Charles. The evidence tends to prove the contrary. Appellee Wolf produced at the hearing the trust deed, two interest notes, executed May 4, 1901, when the extension agreement was made, the extension agreement, and the principal note, and testified that he got those papers when they were made, and that they had never been out of his possession. This evidence is uncontradicted. Wolf also testified that he always got the interest, at Charles' office, from Henry Schumacher, and John C. testified that Henry was a clerk in Charles' office and represented Charles when he was not around. Wolf testified that Henry Schumacher paid the interest to him for the last time in November, 1902, and that May, 1903, John C. Schumacher paid him the interest. Henry Schumacher produced a certain account book of his brother Charles and testified that, from inspection of it, he would say that the last payment of interest was December 1, 1902, thus substantially corroborating Wolf. It is to be observed also that the semi-annual interest fell due in the months of May and November. Thus we have Henry Schumacher, brother and clerk of and representing Charles, paying interest to appellee about eight months after the execution of the release, and John C. Schumacher doing likewise about fourteen months after the execution of the release.

Wolf was never notified that his note was paid, although Charles C. Schumacher's books show a credit to him March

5, 1905, of $927, and the evidence shows that the principal note and some of the interest notes have not been paid, and that Wolf never knew of the release until June, 1903.

Summarizing, the evidence discloses these facts: Charles C. Schumacher released the trust deed, well knowing that appellee Wolf was the owner and in possession of the principal note and the unpaid interest notes. John C. Schumacher was familiar with the business of his brother Charles and knew that he sold securities, and his presumption was that, ordinarily, he would sell the note and trust deed in question. He did not see, nor did he request to see, nor did he inquire about the said note or trust deed. Eight months after the execution of the release Henry Schumacher, clerk and representative of Charles, in the latter's business, paid appellee Wolf the semi-annual interest then due on the note. Fourteen months after the execution of the release, the appellant, John C. Schumacher, paid appellee Wolf the semi-annual interest then about due. On this state of facts, the learned chancellor was asked by appellants to believe that John C. Schumacher, in good faith, paid the principal note and all interest due thereupon, believing that his brother Charles was the owner of the note. To believe this seems to have overtaxed the credulity of the learned chancellor. In Hess v. Killebrew, 209 Ill., 193, 200, the court say: "Where the trial court, in a trial without a jury, has had an opportunity of seeing the witnesses and of hearing their testimony as it is delivered orally, the findings of such court upon mere questions of fact, when the testimony is conflicting, will not ordinarily be disturbed, on appeal, unless such findings are clearly and manifestly against the preponderance of the evidence. Lane v. Lesser, 135 Ill., 567; Burgett v. Osborne, 172 id., 227; Delaney v. Delaney, 175 id., 187; Phelan v. Hyland, 197 id., 395."

We cannot say that the finding of the court that John C. Schumacher knew that the note had been assigned by his brother Charles, is manifestly against the weight of the evidence. On the contrary, we think the court's finding

amply sustained by the facts proven.   John C. Schumacher did not testify that he believed the note had not been assigned when he claims to have paid it.   He was questioned and answered as follows:   Q. "As a matter of fact, you understood your brother was doing a brokerage business?" A. "Yes, sir."   Q. "And was not loaning his own money?" A. "Well, he loaned his own money so far as I knew, and then sold the papers afterwards. *Whether he owned this paper I did not know.*"

If, as John C. Schumacher claims, he paid the note at the time he received the release, without seeing the note, which last the evidence shows and he admits, he paid it with notice that Charles C. Schumacher had no authority to receive payment of it.   Fortune v. Stockton, 182 Ill., 454, 462.   The court found that "at the time of the execution, delivery and recording of the release aforesaid, said Association had notice that the note of Humboldt von Horn, secured by trust deed of May 5, 1892, was unpaid and uncancelled, and that said release deed was executed and recorded without authority, on the part of said Charles C. Schumacher, and without authority from the complainant, William H. Wolf, and was in fraud of the latter's rights and equities."

A corporation is a mere political entity, bodiless and soulless, and can only act, receive notice or know by or through its agents or officers, and the knowledge of John C. Schumacher, the secretary of the appellant, was, in law, the knowledge of the Association.   Inter-State B'g & L. Ass'n v. Ayer, 177 Ill., 9.   But it was only necessary that John C. Schumacher, himself, should have notice of the assignment.   He was the real owner of the lots and must, in equity, be regarded as the grantor in the trust deed, and the rule requiring notice to be given by the equitable assignee of a mortgage does not require it to be given to third persons unknown to the assignee, but only to the mortgagor. Schultz v. Sroelowitz, 191 Ill., 249.

At the time of the assignment to appellee Wolf, the Abraham Lincoln etc. Association had no interest in the prem-

ises. John C. Schumacher testified, in substance, that, he applied to the appellant, the Building and Loan Association, for a loan of $6,000, and obtained the loan, and that the money which he claims he paid to his brother Charles, when he obtained the release, and the balance due on the prior Dunlop encumbrance was paid from the proceeds of the loan, and he only received from the Association the balance of the $6,000.

Appellants' counsel say that there is no evidence that John C. Schumacher knew that von Horn executed the extension agreement. This certainly, if true, does not affect the question of John C.'s knowledge of the assignment, but we think it is not true. Von Horn, the agent and trustee of John C. Schumacher, who executed the principal note, and the trust deed, executed the extension agreement and also executed and endorsed the new notes for the semi-annual interest. Wolf testified that he received these notes when they were made, and that all of them which were paid, with the exception of the one paid to him directly by John C. Schumacher, were paid at Charles C. Schumacher's office by Henry Schumacher, Charles' brother, clerk and representative. The first interest notes were payable semi-annually at the rate of 7 per cent. per annum, and therefore were for $31.50 each. The new series were, by the extension agreement, at the rate of 6 per cent. per annum, and, therefore, for $27 each. The old interest notes for $31.50 each were paid at Charles' office by his clerk, Henry, and, as has been said, some of the new ones were paid by Henry and one by John C. Schumacher. Henry and John C. Schumacher, as business men, must have observed, by the difference between the former and latter rate of interest, that there must have been some new agreement, and the presumption is, as we think, that John C. Schumacher authorized the extension, which was for his benefit.

Lastly, appellants' counsel contends that, on the hypothesis that the court did not err in decreeing the foreclosure of the von Horn trust deed, the appellant Association should have been subrogated to the rights of the holder

of the Dunlop trust deed. The Association does not assert such right in its answer, nor did it file a cross-bill praying it, nor is the failure to allow it assigned as error. Under these circumstances, the Association is not in a position to raise the question of its right to subrogation here. Berry v. City of Chicago, 192 Ill., 184, and cases cited.

The decree will be affirmed.

*Affirmed.*